IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| MARK MACK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 3:21-CV-102 (CAR) |
| | : | |
| WATSON TRUCKING, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Mark Mack ("Mack") asserts employment discrimination and retaliation claims under Title VII and 42 U.S.C. § 1981 against his former employer Watson Trucking, Inc. ("Watson Trucking"). Mack claims that Watson unlawfully discriminated against him on the basis of race and retaliated against him for reporting the alleged discrimination. Currently before the Court is Defendant Watson Trucking's Motion for Summary Judgment. Having considered the record, the parties' briefs, and applicable law, Watson Trucking's Motion [Doc. 11] is **GRANTED**.

## BACKGROUND

Watson Trucking is a dump truck company which primarily transports dirt, sand, and gravel for its customers.[1] Three individuals hold leadership positions in Watson

---

[1] Deposition of Jody Watson ("J. Watson Depo"), [Doc. 15] at 8:22-23.

1

Trucking: Jody Watson is the president and owner; Lynnette Watson is the office manager; and Neal Cox ("Cox") is a supervisor and dispatcher.[2] The parties do not dispute Watson trucking had fourteen or fewer employees for each week of 2018.[3] Payroll records provided by Watson Trucking reflect the company had fifteen or more employees for only seventeen weeks in 2019.[4]

Watson hired Mack, an African-American male, as a dump truck driver on November 1, 2019.[5] The factual basis forming Mack's claims stems from an altercation between Mack and John Morton ("Morton")—another driver employed by Watson Trucking.[6] On September 23, 2019, Mack passed Morton while leaving a worksite. Mack alleges Morton flagged him down, unprovoked, and exclaimed from his truck: "I'll snatch you out that truck and stomp a mud hole in your ass, [n****r]."[7] Both men exited their truck, Morton shoved Mack, and a physical altercation ensued.[8] During the altercation, Morton

---

[2] Mack's Response to Watson Trucking's Statement of Undisputed Material Facts, [Doc. 19-5] at ¶ 3, 4. Deposition of Neal Cox ("Cox Depo"), [Doc. 25] at 7:19-20.

[3] Mack's Response to Watson Trucking's Statement of Undisputed Material Facts, [Doc. 19-5] at ¶ 5.

[4] L. Watson Aff., [Doc. 11-5]; 2019 Payroll Records, [Doc. 11-7]; 2019 1099 Employee Records, [Doc. 11-9]. The Court notes Mack disputes this contention. *See* Mack's Response to Watson Trucking's Statement of Undisputed Material Facts, [Doc. 19-5] at ¶ 6. The Court addresses Mack's objection in more detail below.

[5] Complaint, [Doc. 3] at ¶ 10.

[6] Morton passed away from a motorcycle accident in July of 2020, and thus, did not offer testimony in this case. *See* J. Watson Depo., [Doc. 15] at 15:22-16:1; Watson Trucking's Motion for Summary Judgment, [Doc. 11] at p. 2 fn. 1.

[7] Deposition of Mark Mack ("Mack Depo.") [Doc. 13] at 39:8-40:14. The Court has sanitized the racial used by Morton and replaced the full slur used with "n****r." In doing so, the Court does not mean to diminish its impact.

[8] *Id*. at 42:25-44:3.

2

swung at Mack but did not make contact and called Mack a n****r two additional times.[9]

Mack punched Morton twice and called him a "cracker."[10] Two Watson Trucking

employees, Jack and Corey, eventually broke up the altercation, and the men separated.[11]

Mack then drove to Watson Trucking's office where he told Lynnette Watson about the

altercation with Morton.[12] Mack called Jody Watson to inform him of the same.[13]

Mack went to St. Mary's Hospital in Athens, Georgia for treatment of the injury he

received to his forearm during the altercation.[14] Mack was diagnosed with a forearm

contusion and provided an ACE bandage and ibuprofen.[15] An x-ray of Mack's arm revealed

no fracture, and he was cleared to return to work the next day with no restrictions.[16]

The day after the altercation, Jody Watson spoke to Mack and Morton individually.[17]

During the conversations, Jody Watson "got onto both of them pretty good," told Mack and

Morton they needed to separate, not be around each other, and stated that if he "heard them

say what they said to each other again, [he'd] fire both of them."[18] Thereafter, Morton was

---

[9] *Id.* at 37:3-49:3.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 48:22-50:10.

[13] *Id.* at 50:14-25.

[14] *Id.* at 58:21-60:13.

[15] St. Mary's Records, [Doc. 13-11].

[16] *Id.* While Mack contends he suffered a "hairline fracture" to his forearm, he offers no evidence supporting such an injury. Mack's contention is directly contradicted by his hospital records which state "[t]here is no fracture." *See id.* at p. 22.

[17] J. Watson Depo, [Doc. 15] at 19:20-24.

[18] Mack Depo, [Doc 13] at 20:16-22.

placed on probation and given a written warning notice—which he signed—that stated: "Had a physical and verbal altercation with another employee on the job. John [Morton] understands he is to stay away from Mark Mack or he will be fired."[19]

Mack was not placed on probation.[20] Mack, however, was not satisfied with how Watson Trucking disciplined Morton and believed he should have been fired.[21] But when asked, "[y]ou don't know what, if any, disciplinary action Mr. Morton received as a result of y'all's altercation, do you?," Mack responded, "[n]o, I do not."[22]

A week later, on October 3, 2019,[23] Cox informed all Watson Trucking drivers—including Mack—that there would be a mandatory workday on Saturday, October 5, 2019.[24] Mack told Cox he would not be able to attend the mandatory workday because he needed to drive his mother to her dialysis appointment.[25] Cox informed Mack that if he did not show up to the mandatory workday he would be fired.[26] Mack did not attempt to reschedule his mother's appointment or find someone else to drive his mother to the appointment.[27]

Mack was the only active driver employed by Watson Trucking who failed to show

---

[19] *Id*. at 22:19-23:5; 26:3-27:3; Morton Warning Notice, [Doc. 15-2].

[20] *Id*. at 25:20-22.

[21] *Id*. at 29:25-30:14.

[22] *Id*. at 58:15-18.

[23] The Court notes Mack alleges he was informed of the mandatory workday on October 3, 2019, in his Complaint and throughout his response to Watson Trucking's Motion. But in his Deposition, Mack stated he was informed on October 4, 2019.

[24] Complaint, [Doc. 3] at ¶ 11; Mack Depo, [Doc. 13] at 75:7-14.

[25] Mack Depo, [Doc. 13] at 75:20-21.

[26] *Id*. at 85:23-86:12.

[27] *Id*. at 83:7-85:1.

up to the mandatory workday on Saturday, October 5, 2019.[28] Cox called Mack the next day and informed him his services were no longer needed—to which Mack responded he was quitting anyway.[29] Cox wrote a reprimand which stated: "No Show No Call in it Was A Mandatory Work Day New [sic] 2 days in Advance."[30] Thereafter, Lynnette Watson completed a separation notice which stated: "Mark was told on Thursday Oct. 3, 2019, that it was mandatory to work on Saturday Oct. 5, 2019. He told us he had plans but we stated it was mandatory for all drivers to work. He did not show up. He was fired on October 7, 2019."[31] Over the thirteen days between the altercation and Mack's termination, Mack and Morton were present at the same job site "at least three times" for "maybe four or five minutes."[32] But Morton and Mack did not speak to one another.[33]

The day after he was fired on October 8, 2019, Mack filed a charge of discrimination with the EEOC against Watson Trucking.[34] The EEOC issued a dismissal and notice of rights on June 9, 2021.[35] Mack timely filed the present suit against Watson Trucking asserting claims for retaliation, disparate impact, and hostile work environment under Title VII and 42 U.S.C. § 1981. Watson Trucking now moves for summary judgment on Mack's claims.

---

[28] L. Watson Aff., [Doc. 11-5] at ¶ 10.
[29] Mack Depo, [Doc. 13] at 86:20-24.
[30] Employee Warning, [Doc. 13-14].
[31] Separation Notice, [Doc. 13-15].
[32] Mack Depo, [Doc. 13] at 94:16-97:14.
[33] *Id.*
[34] Mack's EEOC Charge of Discrimination, [Doc. 13-9].
[35] EEOC Dismissal and Notice of Rights, [Doc. 13-18].

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[36]  Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.[37]  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[38]

On summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party; the Court may not make credibility determinations or weigh the evidence.[39]  The moving party "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[40]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to respond by setting forth specific evidence in the record and articulating the precise manner in which

---

[36] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

[37] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

[38] *See id.* at 249-52.

[39] *See id.* at 254-55; *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir. 1992).

[40] *Celotex,* 477 U.S. at 323 (internal quotation marks omitted).

that evidence creates a genuine issue of material fact or that the moving party is not entitled to a judgment as a matter of law.[41] This evidence must consist of more than mere conclusory allegations or legal conclusions.[42]

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law."[43] Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'"[44] "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party."[45] Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact."[46]

## DISCUSSION

Mack asserts claims under Title VII and 42 U.S.C. § 1981 alleging Watson Trucking

---

[41] *See* Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 324-26.

[42] *Avirgnan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991).

[43] *Kerr v. McDonald's Corp.,* 427 F.3d 947, 957 (11th Cir. 2005) (internal quotations omitted).

[44] *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ens. Co. of Southeast,* 492 F. App'x 16, 26 (11th Cir. 2012) (quoting *Anderson,* 477 U.S. at 249-50).

[45] *Id.* (citing *Anderson,* 477 U.S. at 252).

[46] *Rich v. Sec'y, Fla. Dept. of Corr.,* 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

unlawfully discriminated against him on the basis of race and terminated him in retaliation for reporting the alleged discrimination. Watson Trucking contends it is not an "employer" as defined by Title VII and Mack's § 1981 claims are without merit.

## I.      Title VII Claims

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[47] Title VII "limits the definition of 'employer' to entities that have 'fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.'"[48] For purposes of determining the existence of an employment relationship, courts "look first and primarily to whether the individual in question appears on the employer's payroll."[49] The Eleventh Circuit has held that "only individuals who receive compensation from an employer can be deemed 'employees' under the statute."[50] Because Mack alleges the discriminatory and retaliatory conduct occurred between September 23, 2019, and October 7, 2019, the relevant inquiry is whether Watson Trucking had fifteen or more employees during twenty or more calendar weeks in 2018 and 2019.[51]

The parties do not dispute Watson trucking had fourteen or fewer employees for each

---

[47] 42 U.S.C. § 2000e-2(a)(1).

[48] *Bouey v. Orange Cty. Serv. Unit*, 673 F. App'x 952, 954 (11th Cir. 2016) (citing 42 U.S.C. § 2000e(b)).

[49] *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 211 (1997).

[50] *Bouey*, 673 F. App'x 952, 954 (citing *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1243 (11th Cir. 1998)).

[51] Mack's EEOC Charge of Discrimination, [Doc. 13-9].

week of 2018.[52] An affidavit and supporting payroll documentation provided by Lynnette Watson demonstrate the company had fifteen or more employees for only seventeen weeks in 2019.[53] Mack, however, disagrees and cites to Watson Trucking's interrogatory responses which listed twenty-one individuals as employed by Watson Trucking in 2019.[54] Mack contends Watson Trucking's response creates a dispute of material fact concerning whether the company did, in fact, have the requisite number of employees. The Court disagrees. The relevant inquiry is not whether Watson Trucking employed fifteen or more individuals collectively during 2018 and 2019, but whether it had "fifteen or more employees for each working day in each of twenty or more calendar weeks."[55] Furthermore, it is Mack—not Watson Trucking—who is responsible for proving that there is the threshold number of employees for application of Title VII.[56]

Mack failed to establish Watson Trucking is an employer under Title VII. While the Eleventh Circuit has noted payroll records alone are not dispositive in determining whether Watson is an "employer" under Title VII, Mack must offer evidence—not conclusory statements—to competently rebut such records.[57] Mack offers no evidence to plausibly suggest Watson Trucking employed additional individuals or agents not

---

[52] Mack's Response to Watson Trucking's Statement of Undisputed Material Facts, [Doc. 19-5] at ¶ 5.
[53] Affidavit of Lynnette Watson ("L. Watson Aff."), [Doc. 11-5]; 2018 Payroll Records, [Doc. 11-6]; 2018 1099 Employee Records, [Doc. 11-8].
[54] Watson's Interrogatory Responses, [Doc. 19-1] at p. 4-5.
[55] *Bouey*, 673 F. App'x 952, 954 (11th Cir. 2016) (citing 42 U.S.C. § 2000e(b)).
[56] *Id*. (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006)).
[57] *Id*.

9

reflected in the payroll records produced to the Court. Thus, Watson Trucking is entitled to summary judgment on Mack's Title VII claims.

## II.    § 1981 Claims

Mack asserts retaliation and race discrimination claims for disparate treatment and hostile work environment under 42 U.S.C. § 1981. "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts."[58] Additionally, § 1981 prohibits an employer from retaliating against an employee in response to the employee's complaint of race-based discrimination.[59]

### A.   Retaliation

Mack contends Watson Trucking unlawfully terminated him in retaliation for reporting discrimination, and the reason for his termination provided by the company was pretextual. Watson Trucking asserts Mack did not engage in statutorily protected activity and fails to establish pretext. The Court agrees.

"Section 1981 retaliation claims are analyzed under the same framework as other employment retaliation claims."[60] To make out a prima facie case of retaliation, Mack must show that: "(1) [he] engaged in a statutorily protected activity; (2) [he] suffered a materially adverse action; and (3) there is a causal connection between the protected activity and the

---

[58] *Hampton v. Amedisys Ga., LLC*, No. 22-11275, 2023 U.S. App. LEXIS 598, at *3 (11th Cir. Jan. 11, 2023) (citing 42 U.S.C. § 1981; *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459-60 (1975)).

[59] *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998).

[60] *Shannon v. AMTRAK*, 774 F. App'x 529, 542 (11th Cir. 2019) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)).

materially adverse action."[61] If the plaintiff does so, and the employer proffers a legitimate, nondiscriminatory reason for its actions, then the plaintiff must show that the reason given is pretextual.[62]

   *1. Protected Activity*

Mack's complaints about Morton's conduct do not amount to protected activity. "To meet the first prong – statutorily-protected activity – a plaintiff must show that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices, which, in the § 1981 context, must be racial discrimination."[63] Thus, "to constitute protected activity under § 1981, a plaintiff would be required, in part, to subjectively believe that the unlawful employment practice complained of was racial discrimination."[64] The Eleventh Circuit has noted "not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual."[65]

Nothing in the record demonstrates Mack complained about an unlawful employment practice by Watson Trucking which amounted to racial discrimination. The only complaints raised by Mack concerned Morton's conduct during their altercation and

---

[61] *Id*. (citing *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010)).

[62] *Brown*, 597 F.3d at 1181-82.

[63] *Bell v. City of Auburn*, 722 F. App'x 898, 900 (11th Cir. 2018) (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 961 (11th Cir. 1997)).

[64] *Id*.

[65] *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997).

Watson Trucking's decision not to fire Morton. Furthermore, Mack cannot demonstrate that he had a good faith, reasonable belief that Watson engaged in unlawful employment practices by not disciplining Morton. When asked, "[y]ou don't know what, if any, disciplinary action Mr. Morton received as a result of y'all's altercation, do you?," Mack responded, "[n]o, I do not."[66] Lacking any knowledge of the disciplinary action taken by Watson Trucking, Mack could not have reasonably believed the company failed act or that the action taken was lawfully inadequate.

2.   *Pretext*

Even if Mack had engaged in protected activity, he fails to establish pretext. To establish pretext at the summary judgment stage, Mack must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."[67] "[A] reason is not pretext for [retaliation] 'unless it is shown *both* that the reason was false, and that [retaliation] was the real reason.'"[68] The Eleventh Circuit has emphasized, "in determining whether the plaintiff has met [his] burden to show pretext, we remain mindful that it is the plaintiff's burden to provide evidence from which one could reasonably conclude that but for [his] alleged protected act, [his] employer would

---

[66] Mack Depo, [Doc. 13] at 58:15-18.

[67] *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

[68] *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)) (emphasis in original).

not have fired [him]."[69]

Mack fails to satisfy either requirement. Mack's own testimony demonstrates Cox informed him of the mandatory workday in advance.[70] Notably, Cox specifically told Mack that if he did not show up to the mandatory workday he would be fired.[71] Mack was the only active driver employed by Watson Trucking who failed to show up to the mandatory workday on Saturday, October 5, 2019.[72] For that legitimate and non-discriminatory reason—and just as Cox warned—Mack was terminated on October 7, 2019. Furthermore, nothing in the record suggests the real reason for Mack's termination was retaliation. Thus, Watson Trucking is entitled to summary judgment on Mack's retaliation claim.

B.  Disparate Treatment

Mack concedes that he "can produce no evidence in the record of this case that raises a triable issue of fact as to his truck being in a greater state of disrepair than any other trucks owned by Watson."[73] Thus, Watson is entitled to summary judgment on Mack's disparate treatment claim.

C.  Hostile Work Environment

Mack fails to demonstrate sufficient "severe and pervasive" harassment or that Watson Trucking should be held liable for Morton's actions. Section 1981 hostile work

---

[69] *Gogel v. Kia Motors Mfg. of Ga.*, 967 F.3d 1121, 1137 (11th Cir. 2020).

[70] Complaint, [Doc. 3] at ¶ 11; Mack Depo, [Doc. 13] at 75:7-14.

[71] Mack Depo, [Doc. 13] at 85:23-86:12.

[72] L. Watson Aff., [Doc. 11-5] at ¶ 10.

[73] Mack's Response, [Doc. 19] at ¶ 20.

environment claims are analyzed under the same legal framework as Title VII.[74] "For a hostile work environment claim, the employee must prove: (1) [he] belongs to a protected class; (2) [he] was subjected to unwelcome harassment; (3) the harassment was based on [his] race; (4) the harassment was severe or pervasive enough to alter the terms of [his] employment and create an abusive working environment; and (5) the employer is responsible for the environment under a theory of vicarious or direct liability."[75]

While the language Morton directed at Mack was incredibly inappropriate, the record does not demonstrate sufficiently "severe and pervasive" harassment to establish a hostile work environment as a matter of law. "Teasing, offhand comments, and isolated incidents that are not extremely serious will not amount to discriminatory changes in the terms and conditions of employment."[76] The Eleventh Circuit, for example, has stated that "racial slurs allegedly spoken by coworkers had to be so 'commonplace, overt and denigrating that they created an atmosphere charged with racial hostility.'"[77]

Here, the only incident of harassment based on Mack's protected characteristic occurred during his altercation with Morton. The altercation was an isolated incident, and the record contains no additional evidence of harassment based on Mack's race. Indeed, Mack admitted that other than the altercation with Morton, no other employees used a racial

---

[74] *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1283 & n.3 (11th Cir. 2018).

[75] *Bell v. Liberty Nat'l Life Ins. Co.*, No. 22-11015, 2023 U.S. App. LEXIS 23180, at *9 (11th Cir. 2023) (citation omitted).

[76] *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

[77] *Alexander v. Opelika City Sch.*, 352 F. App'x 390, 392 (11th Cir. 2009) (citing *Edwards*, 49 F.3d at 1521).

slur while he was employed by Watson Trucking.[78]  Thus, this isolated incident simply cannot amount to the "severe and pervasive" harassment required for a viable hostile work environment claim.[79]

Furthermore, Watson Trucking cannot be held responsible for the environment under a theory of vicarious or direct liability. Watson Trucking's "liability depends on whether the harassing employee is the plaintiff's coworker or supervisor."[80] Mack does not allege that Morton was a supervisor at Watson Trucking—nor does the record support such a finding. "When the perpetrator is merely a coworker, the employer will be held directly liable 'if it knew or should have known of the harassing conduct but failed to take prompt remedial action.'"[81] "If an employer has actual or constructive notice of harassment but takes immediate and appropriate corrective action, the employer is not liable for the harassment."[82]

---

[78] Mack Depo, [Doc. 13] at 54:24-55:2.

[79] *Compare* the altercation between Mack and Morton to the allegations in *McCann v. Tillman*, 526 F.3d 1370, 1378-79 (11th Cir. 2008) (finding evidence insufficient to support a claim for hostile work environment where the plaintiff alleged "white employees made derogatory racial comments about blacks, harsher discipline was received by black employees, and complaints of discrimination were subject to retaliation and not investigated.").  *See also Brathwaite v. Sch. Bd.*, 763 F. App'x 856, 858-59 (11th Cir. 2019) ("the sole physical contact that occurred in the incident consisted of Melendez's swatting Brathwaite's arm away when Brathwaite brought it up toward Melendez. And while we certainly condemn Melendez's reference to Brathwaite as a 'black bitch' during the incident, even accounting for that fact, we cannot say that the district court erred in concluding that the alleged incident did not create a 'severe or pervasive' atmosphere of discrimination under our precedents.").

[80] *Bell*, 2023 U.S. App. LEXIS 23180, at *9 (11th Cir. Aug. 31, 2023) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002)).

[81] *Bell*, 2023 U.S. App. LEXIS 23180 at *9 (citing *Miller*, 277 F.3d at 1278).

[82] *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1261 (11th Cir. 2003).

Here, Watson Trucking took immediate corrective action, and thus, cannot be liable for the isolated conduct of a co-worker. The day after the altercation, Jody Watson spoke to Mack and Morton individually.[83]  During the conversations, Jody Watson "got onto both of them pretty good," told Mack and Morton they needed to separate, not be around each other, and stated that if he "heard them say what they said to each other again, [he'd] fire both of them."[84] Thereafter, Morton was placed on probation and given a written warning notice—which he signed—that stated: "Had a physical and verbal altercation with another employee on the job. John [Morton] understands he is to stay away from Mark Mack or he will be fired."[85]

Mack contends the corrective action taken by Watson Trucking was insufficient because Morton was present at the same worksite as  him and "stared at him in a menacing way" which made him feel uncomfortable.[86] But during the thirteen days between the altercation and Mack's termination, Mack and Morton were only present at the same work site "at least three times" for "maybe four or five minutes."[87] During these occasions, Morton and Mack never spoke to one another.[88] These allegations are simply insufficient to demonstrate an objectively hostile and abusive workplace or that Watson Trucking failed to

---

[83] J. Watson Depo, [Doc. 15] at 19:20-24.
[84] Mack Depo, [Doc 13] at 20:16-22.
[85] *Id*. at 22:19-23:5; 26:3-27:3; Morton Warning Notice, [Doc. 15-2].
[86] Mack Depo, [Doc. 13] at 94:16-97:14.
[87] *Id*.
[88] *Id*.

take immediate and appropriate corrective action. Because the harassment was not sufficiently severe and pervasive, and Watson Trucking cannot be held liable under a theory of direct or vicarious liability, it is entitled to summary judgment on Mack's hostile work environment claim.

## CONCLUSION

For the foregoing reasons, Watson Trucking's Motion for Summary Judgment [Doc. 23] is **GRANTED.**

**SO ORDERED**, this 13th day of September, 2023.

s/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

17